IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROY A. DAY,

                Plaintiff,

v.

SPECTRUM BRANDS HOLDINGS, INC. and
DAVID R. LUMLEY,

                Defendants.

OPINION & ORDER

15-cv-140-jdp

---

*Pro se* plaintiff Roy Day, a resident of Florida, has filed a proposed complaint in which he alleges that defendants Spectrum Brands Holdings, Inc. and David Lumley negligently caused him to suffer severe emotional distress. Dkt. 1. Specifically, plaintiff alleges that he became enraged after discovering inaccuracies in the written instructions accompanying an electric shaver that he purchased. With his complaint, plaintiff filed a motion for an order allowing him to gain free access to PACER. Dkt. 3.

The court granted plaintiff leave to proceed without prepaying his filing fees. Dkt. 4. The next step in this case is for me to screen plaintiff's complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for monetary damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915. In screening any *pro se* litigant's complaint, I must read the allegations of the complaint generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). After reviewing the complaint with this principle in mind, I conclude that plaintiff has failed to state a claim upon which relief can be granted. I will therefore dismiss plaintiff's complaint, and I will deny his motion for access to PACER.

ALLEGATIONS OF FACT

Plaintiff is a resident of Florida. Defendant Spectrum Brands Holdings, Inc., is a Wisconsin corporation with its principal place of business in Middleton, Wisconsin. Defendant David Lumley is the chief executive officer of Spectrum Brands, and he resides in Wisconsin.

Plaintiff purchased a Remington electric shaver on February 14, 2015. According to plaintiff, Spectrum Brands manufactured and marketed the shaver. Plaintiff's shaver came with instructions for daily use, cleaning, and safety, and plaintiff attached these instructions as an exhibit to his complaint. *See* Dkt. 1-1, at 2. Among other things, the instructions recommend cleaning the shaver each day by removing the hair pocket from the top of the device and emptying the stubble that collects below the blades.

Sometime after purchasing the shaver, plaintiff tried to remove the hair pocket to clean the device. Rather than summarize plaintiff's allegations, I will quote his recitation of what happened next:

> Following the instructions in the "Cleaning & Care" guide (See Exhibit "1") Plaintiff attempted to remove the hair pocket, but the hair pocket would not disengage from the shaver. Plaintiff bec[a]me enraged that a BILLION DOLLAR COMPANY, with TEN THOUSAND EMPLOYEES, could write and disseminate a "Use and Care Guide" that was one hundred percent (100%) incorrect. Plaintiff almost broke the shaver attempt[ing] to remove the hair pocket following the incorrect instructions. Plaintiff placed the [shaver] on a table, and after three hours of mansuetude, Plaintiff attempted to remove the hair pocket again, and realized that the "Use and Care Guide – Cleaning & Care" section was 100% incorrect. **N.B. – NOTA BENE:** One does **not** grab the side of the shaver, but the front of the shaver to remove the hair pocket.

Dkt. 1, ¶ 6 (original emphasis).

Plaintiff contacted customer support to complain about the faulty instructions. But when a customer support representative asked plaintiff to return the shaver so that Spectrum Brands could process plaintiff's claim, he refused. Plaintiff explained to the representative that returning the shaver would violate the best evidence rule (presumably referring to Federal Rule of Evidence 1002, or the state-law equivalent).

According to plaintiff, the faulty instructions and the unhelpful customer support are part of an underlying conspiracy to coerce consumers into breaking their shavers and then having to purchase new ones. Plaintiff seeks a declaratory judgment that defendants' actions in this case were negligent, and he seeks a total of $45,000,000 in compensatory damages and $100,000,000 in punitive damages.

ANALYSIS

Plaintiff's complaint explicitly mentions two state law causes of action: emotional distress and negligence.[1] These claims appear to be duplicative because the only injury that plaintiff alleges is emotional distress. I therefore construe plaintiff's complaint as alleging one claim against defendants for the emotional distress that he suffered as a result of defendants' faulty instructions. I must look to Wisconsin law to determine whether plaintiff has stated such a claim. I conclude that he has not.

---

[1] Plaintiff also states that he is pursuing a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. Dkt. 1, ¶¶ 4-11. Plaintiff seeks a declaration that defendants' actions amount to negligence. But "[w]here the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action 'serves no useful purpose' because the controversy has 'ripened' and the uncertainty and anticipation of litigation are alleviated." *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) (quoting *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)). I will therefore deny plaintiff leave to proceed on a claim for declaratory judgment because his substantive claims fully address the issues in this case.

Plaintiff does not indicate whether he is pursuing a claim for negligent infliction of emotional distress or for intentional infliction of emotional distress. But ultimately, it does not matter because plaintiff could not succeed on either claim. Under Wisconsin law, "the elements of a cause of action for negligent infliction of emotional distress [are]: negligent conduct, causation, and injury (severe emotional distress)." *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432, 443 (1994). A complaint that alleges these elements does not necessarily state a claim, however, because "[a] court may decide, as a matter of law, that considerations of public policy require dismissal of the claim. These public policy considerations are an aspect of legal cause, although not a part of the determination of cause-in-fact." *Id.* Although courts in Wisconsin tend to address public policy considerations at summary judgment or after trial, the state's supreme court has held that "when the pleadings clearly present a question of public policy and the factual issues are simple and clear, it may be advantageous for a trial court to make a determination regarding legal causation at the pleadings stage." *Kleinke v. Farmers Co-op. Supply & Shipping*, 202 Wis. 2d 138, 549 N.W.2d 714, 716 (1996).

The applicable public policy considerations that may preclude liability for negligent infliction of emotional distress include:

> (1) whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) whether allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) whether allowance of recovery would be too likely to open the way to fraudulent claims; or (6) whether allowance of recovery would enter a field that has no sensible or just stopping point.

*Bowen*, 517 N.W.2d at 444. Simply stated, these factors allow Wisconsin courts to hold as a matter of law that no liability exists "[w]hen it would shock the conscience of society to impose liability." *Id.* Here, all six factors weigh against allowing plaintiff's claim to proceed. Permitting recovery for erroneous instructions on how to clean an electric shaver—particularly when plaintiff discovered the correct way to do so a short time later—would shock the conscience of society. Plaintiff therefore could not succeed on a claim for negligent infliction of emotional distress.

Turning to intentional infliction of emotional distress, there are four elements for a claim under Wisconsin law. Plaintiff must allege that defendants' conduct was: (1) intentional, i.e., for the purpose of causing emotional distress to plaintiff; (2) extreme and outrageous; and (3) a cause-in-fact of plaintiff's injury; and plaintiff must also allege that he (4) suffered an extreme disabling emotional response to defendants' conduct. *Woltring v. Specialized Loan Servicing LLC*, 56 F. Supp. 3d 947, 952 (E.D. Wis. 2014) (citing *Alsteen v. Gehl*, 21 Wis. 2d 349, 124 N.W.2d 312, 318 (1963)). Plaintiff's complaint is insufficient with regard to all four of these elements, most noticeably the first and second.

"To satisfy the element of intent, the 'plaintiff must establish that the purpose of the conduct was to cause emotional distress.'" *Id.* (internal citations and quotation marks omitted). It is not enough to show that "defendant intentionally engaged in the conduct that gave rise to emotional distress in the plaintiff; the plaintiff must show that the conduct was engaged in for the purpose of causing emotional distress." *Id.* (internal citations and quotation marks omitted). I must accept as true plaintiff's allegations that the instructions were faulty. *See* Dkt. 1, ¶ 20. But that would not be conduct engaged in *for the purpose* of causing plaintiff emotional distress. "Certainly that was a by-product, but that is insufficient

5

standing alone." *Rabideau v. City of Racine*, 2001 WI 57, ¶ 36, 243 Wis. 2d 486, 627 N.W.2d 795.

Nor could defendants' conduct in this case qualify as "extreme and outrageous." "The standard requires that 'the average member of the community must regard the defendant's conduct in relation to the plaintiff, as being a complete denial of the plaintiff's dignity as a person.'" *Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 994 (E.D. Wis. 2000) (quoting *Alsteen*, 124 N.W.2d at 318). No reasonable person could conclude that a slight error in depicting how to clean an electric shaver rises to the level of extreme and outrageous conduct. Plaintiff's complaint therefore fails to state a claim for intentional infliction of emotional distress.

Because plaintiff cannot proceed with either of the claims that I am able to discern in his complaint, I must dismiss this case in its entirety. But I will also address two points in closing. First, after plaintiff filed his complaint, defendants submitted a "status report" recommending that I dismiss this case as frivolous. Dkt. 5. In screening plaintiff's complaint, I did not consider this report or the arguments that defendants presented. Although not technically improper, defendants' filing demonstrates a misunderstanding of the screening procedure under 28 U.S.C. § 1915, which directs courts to conduct their own substantive review of complaints from plaintiffs proceeding *in forma pauperis*. This is not an adversarial process, and so defendants' submission was unnecessary.

Second, plaintiff has filed a motion for free access to PACER. Dkt. 3. He contends that access to PACER will allow him to "view the docket sheets and to file pleadings electronically." *Id.* at 2. But at this point in the case, the docket consists almost entirely of documents that plaintiff himself submitted and of orders that the court mailed to him. I did

6

not consider defendants' status report in screening plaintiff's complaint, but I will nevertheless direct the clerk's office to mail plaintiff a copy of the filing (although the filing indicates that plaintiff was already sent a copy). I will also direct the clerk's office to mail plaintiff a copy of the docket sheet. Plaintiff will therefore have copies of all the documents on the docket, as well as a record of every filing that the court has received. And because I am dismissing plaintiff's case, there will likely be few, if any, additional filings. Thus, plaintiff has not demonstrated that he will experience "unreasonable burdens" without access to PACER, and so I will deny his motion. *See U.S. Small Bus. Admin. v. Herbst*, No. 08-cv-01396, 2011 WL 5529850, at *1 (D.N.J. Nov. 14, 2011).

ORDER

IT IS ORDERED that:

1. This case is DISMISSED with prejudice for failure to state a claim upon which relief can be granted.

2. Plaintiff Roy Day's motion for order to gain access to PACER, Dkt. 3, is DENIED.

3. The clerk of court is directed to mail a copy of the docket sheet and of defendants David Lumley and Spectrum Brands Holdings, Inc.'s "status report," Dkt. 3, to plaintiff.

4. The clerk of court is further directed to close this case.

5. Plaintiff is reminded that he must pay the remainder of his filing fee.

Entered October 19, 2015.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge